IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARCO DIPRATO and : | |
| MARINA BRADLEY, : | |
|     Plaintiffs, : | |
| : | CIVIL ACTION |
| v. : | NO. 21-507 |
| : | |
| CYNTHIA BERNSTIEL, : | |
|     Defendant. : | |

**January 24, 2022**                                                                                          Anita B. Brody, J.

## <u>MEMORANDUM</u>

Plaintiffs Marco DiPrato and Marina Bradley bring suit against Defendant Cynthia Bernstiel, alleging sex discrimination, hostile work environment, and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Stat. Ann. § 951 *et seq*. DiPrato and Bradley also bring claims for invasion of privacy and intentional infliction of emotional distress under Pennsylvania common law. I exercise federal question jurisdiction over the Title VII claim pursuant to 28 U.S.C. § 1331.

Currently pending is Bernstiel's motion to dismiss. For the following reasons, I will grant Bernstiel's motion to dismiss DiPrato and Bradley's Title VII claim and decline to exercise supplemental jurisdiction over DiPrato and Bradley's state law claims.

**I.     BACKGROUND**

In 2018, DiPrato and Bradley were employees of Rebar Bernstiel, a now-dissolved law firm. Compl. ¶¶ 10–12. Rebar Bernstiel employed DiPrato as an associate attorney and Bradley as an Office Manager. *Id.* During their term of employment with Rebar Bernstiel, DiPrato and

Bradley were engaged in a consensual heterosexual relationship. *Id.* ¶ 13. Rebar Bernstiel had no specific policy against romantic relationships between work colleagues. *Id.* ¶ 86.

In 2018, the working relationship between firm partners Rebar and Bernstiel began to deteriorate. *Id.* ¶ 10. Bernstiel communicated to DiPrato that Rebar Bernstiel would be dissolving and asked both DiPrato and Bradley to join her in working for a new firm. *Id.* ¶¶ 17–20, 29. Bernstiel was aware of the romantic relationship between DiPrato and Bradley and, during Rebar Bernstiel's dissolution, made inappropriate comments to Bradley regarding DiPrato and Bradley's sexual activity. *Id.* ¶¶ 21–28. Becoming increasingly suspicious that DiPrato would not follow her to a new firm, Bernstiel increased her efforts to recruit him. *Id.* ¶¶ 30–33. DiPrato and Bradley subsequently informed Bernstiel that they would not follow her to a new firm, instead remaining with Rebar at the firm now known as Rebar Kelly. *Id.* ¶¶ 33–34. In response, Bernstiel became hostile to both DiPrato and Bradley. *Id.* ¶¶ 35, 38, 40–46.

In March 2020, Rebar Bernstiel—and Rebar in her personal capacity—filed a lawsuit against Bernstiel in the Montgomery County Court of Common Pleas, seeking dissolution of the firm. *Id.* ¶¶ 48–49. Bernstiel filed an Answer and Counterclaim to which she attached an exhibit containing copies of sexually suggestive text messages between DiPrato, Bradley, and a third Rebar Bernstiel employee. *Id.* ¶¶ 51, 56, 59. Bernstiel did nothing to conceal DiPrato and Bradley's identities before filing the exhibit. *Id.* ¶¶ 70–71. In her Answer, Bernstiel cited the text message exhibit in arguing that staff at Rebar Bernstiel were uncomfortable because DiPrato and Bradley "flaunted their sexual relationship" in the office, and in suggesting that Rebar promoted a hostile work environment at the firm. *Id.* ¶¶ 62, 65, 72. Rebar Bernstiel and Rebar filed preliminary objections to the inclusion of DiPrato and Bradley's text messages as an exhibit, and Bernstiel subsequently amended her pleading to remove the messages. *Id.* ¶¶ 89–90.

In October 2020, DiPrato and Bradley also filed a complaint with the Equal Employment Opportunity Commission ("EEOC") regarding Bernstiel's use of their text messages in her state court pleading. *Id.* ¶ 89. One week later, Bernstiel filed a separate suit against Bradley in the Montgomery County Court of Common Pleas.[1] *Id.* ¶ 94. Counsel for Bernstiel also contacted DiPrato and Bradley to discourage them from filing a suit against Bernstiel. *Id.* ¶¶ 99–103. After receiving permission to sue from the EEOC, DiPrato and Bradley filed the instant suit on February 4, 2021. On March 8, 2021, Bernstiel filed the Motion to Dismiss now before the Court.

## II.   STANDARD OF REVIEW

In deciding a motion to dismiss under Rule 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

"To survive a motion to dismiss, a complaint need not be detailed." *Martinez v. UPMC Susquehanna*, 986 F.3d 261, 265 (3d Cir. 2021). But a complaint must allege facts sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In order to determine the sufficiency of a complaint under *Twombly* and *Iqbal*, a court must engage in the following analysis:

> First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are

---

[1] Bernstiel subsequently filed a praecipe to discontinue the action. *Id.* ¶ 97.

well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013) (quoting *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011)). "Plausible does not mean possible. The facts must be more than 'merely consistent with a defendant's liability.' But plausible does not mean probable either. The court need only be able to draw a 'reasonable inference' that the defendant has broken the law." *Martinez*, 986 F.3d at 265 (quoting *Iqbal*, 556 U.S. at 678).

"As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings. However, an exception to the general rule is that a 'document *integral to or explicitly relied* upon in the complaint' may be considered . . . ." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis in original) (citation omitted) (quoting *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)). Thus, a court may consider "the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

### III. DISCUSSION

DiPrato and Bradley allege that Bernstiel violated Title VII by engaging in sex discrimination and creating a hostile work environment when she singled DiPrato and Bradley out for their heterosexual intraoffice relationship and made sexually explicit comments to Bradley. DiPrato and Bradley also allege that Bernstiel retaliated against them for engaging in protected activity—engaging in a heterosexual relationship—by using their text messages in her state court filing and by filing a separate lawsuit against Bradley.

Bernstiel moves to dismiss DiPrato and Bradley's Title VII claim on two grounds. First, Bernstiel argues that DiPrato and Bradley's failed to plead a claim under Title VII. Second,

Bernstiel claims that, as an individual employee rather than an employer, she is not the proper defendant against whom DiPrato and Bradley must bring their Title VII claim.[2]

I consider each of DiPrato and Bradley's Title VII theories in turn.

### a.        Sex Discrimination

Under Title VII, an employer may not "discriminate against any individual with respect to . . . terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a). In order to be successful in bringing a claim of Title VII sex discrimination, a plaintiff must "show that (1) [they are] a member of a protected class; (2) [they were] qualified for [their] position; (3) the particular disciplinary measure was an adverse employment action; and (4) the circumstances of the disciplinary measure give rise to an inference of discrimination." *Jones v. Se. Pa. Transp. Auth.*, 796 F.3d 323, 327 (3d Cir. 2015) (citation omitted).

Bernstiel argues that DiPrato and Bradley cannot claim sex discrimination because Title VII does not protect membership in a heterosexual relationship. Def.'s Br. 9. Furthermore, Bernstiel asserts that neither DiPrato nor Bradley suffered an adverse employment action because both DiPrato and Bradley remain employed and have never experienced loss of promotion, responsibility, or benefits. *Id.* 10.

DiPrato and Bradley counter that, in "singl[ing] out the Plaintiffs . . . based on their heterosexual—and consensual—relationship within the office," Bernstiel discriminated against

---

[2] In her Motion to Dismiss, Bernstiel also argues that DiPrato and Bradley's PHRA claim fails for the same reasons as their Title VII claim, and that their state tort law claims fail under theories of absolute judicial privilege and—in the case of the intentional infliction of emotional distress claim—for failure to plead one of the requisite elements. Because I grant Bernstiel's Motion to Dismiss DiPrato and Bradley's Title VII claim and decline to exercise supplemental jurisdiction over their state law claims, I do not reach Bernstiel's arguments pertaining to those state law claims.

them "based on the characteristic of sex." Pls.' Br. [14]–[15]. Citing the Supreme Court's decision in *Bostock v. Clayton Cty., Georgia*, 140 S. Ct. 1731, 1741 (2020), DiPrato and Bradley argue that their heterosexual relationship grants them membership in a class protected by Title VII. *Id.* [15]–[16]. DiPrato and Bradley also argue that potential damage to DiPrato's professional reputation caused by the release of personal text messages constitutes an adverse employment action. *Id.* [16]–[17].

DiPrato and Bradley fail to adequately plead their sex discrimination claim. "[F]or purposes of pleading sufficiency, a complaint need not establish a *prima facie* case in order to survive a motion to dismiss." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 788 (3d Cir. 2016). "The complaint need only allege enough facts to 'raise a reasonable expectation that discovery will reveal evidence of [each] necessary element.'" *Martinez*, 986 F.3d at 266 (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009)). But where no amount of discovery could place plaintiffs within a protected class or transform the alleged harms into an "adverse employment action," a putative Title VII sex discrimination claim must be dismissed.

First, mere participation in a heterosexual relationship does not provide an individual with Title VII protection. There is no precedent in this—or any—Circuit suggesting otherwise. *Bostock* provides that discrimination "against a person for being homosexual or transgender" equates to discrimination "based on sex." 140 S. Ct. at 1741. *Bostock* does not provide the same protections for openly heterosexual individuals under ordinary circumstances.

Second, DiPrato and Bradley have not suffered an adverse employment action. In the context of Title VII sex discrimination claims, the Third Circuit describes an adverse employment action "as an action by an employer that is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Jones*, 796 F.3d at

6

326 (internal quotation marks omitted) (quoting *Storey v. Burns Int'l Sec. Servs.*, 390 F.3d 760, 764 (3d Cir. 2004)). Put another way, an adverse employment action is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 152-53 (3d Cir. 1999) (internal quotation marks omitted). DiPrato alleges harm to his professional reputation and credibility in the local legal community, and although this may constitute a cognizable claim under legal theories, he and Bradley have suffered no adverse employment action under Title VII.

As such, DiPrato and Bradley have stated no claim for Title VII sex discrimination upon which this Court may grant relief.

    b. **Hostile Work Environment**

Title VII prohibits sexual harassment that is "sufficiently severe or pervasive to alter the conditions of [the plaintiff's] employment and create an abusive working environment." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)). In making a claim of hostile work environment against an employer, a plaintiff must establish that "1) the employee suffered intentional discrimination because of his/her sex, 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected the plaintiff, 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) the existence of *respondeat superior* liability." *Id.* (citing *Jensen v. Potter*, 435 F.3d 444, 449 (3d Cir. 2006), *overruled on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)).

Bernstiel argues that DiPrato and Bradley cannot claim she created a hostile work environment because any alleged workplace harassment was not motivated by—and did not

occur "because of"—DiPrato and Bradley's respective sexes. Bernstiel asserts that, if the alleged actions took place, they could only have been motivated by DiPrato and Bradley's participation in a heterosexual interoffice relationship or by their decision not to depart with Bernstiel. Def.'s Br. 9. DiPrato and Bradley once again assert that any discrimination by Bernstiel was motivated by DiPrato and Bradley's sexes because of their heterosexual interoffice relationship. Pls.' Br. [15]–[16].

As discussed above, participation in a heterosexual relationship does not place DiPrato and Bradley within a protected class under Title VII. As such, DiPrato and Bradley have stated no claim for hostile work environment upon which this Court may grant relief.

### c. Retaliation

Title VII makes it unlawful "for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3. To succeed on a claim of Title VII retaliation, a plaintiff must show that "(1) [they] engaged in activity protected by Title VII; (2) the employer took an adverse employment action against [them]; and (3) there was a causal connection between [their] participation in the protected activity and the adverse employment action." *Moore v. City of Phila.*, 461 F.3d 331, 340–41 (3d Cir. 2006). When a plaintiff engages in protected activity, the merits of their underlying complaint against the employer are irrelevant; a plaintiff need not prove sex discrimination to successfully plead a claim of retaliation. *See Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 565 (3d Cir. 2002) ("Because the statutes forbid an employer's taking adverse action against an employee for discriminatory reasons, it does not matter whether the factual basis for the employer's

discriminatory animus was correct and that, so long as the employer's specific intent was discriminatory, the retaliation is actionable.")

Bernstiel argues that DiPrato and Bradley have failed to adequately plead a retaliation claim because neither DiPrato nor Bradley engaged in a protected activity or suffered an adverse employment action. Def.'s Br. 10. Bernstiel also argues that, because any alleged retaliation took place after Bernstiel separated from Rebar Bernstiel, there can be no Title VII liability. *Id.* 10–11.

DiPrato and Bradley counter that participation in a heterosexual relationship is a protected activity, and that, as argued in support of their sex discrimination claim, DiPrato's alleged loss of professional credibility constitutes an adverse employment action for purposes of pleading a Title VII retaliation claim. Pls.' Br. [15]–[17]. DiPrato and Bradley counter Bernstiel's argument that the timing of alleged retaliation precludes liability by noting that, at the time DiPrato and Bradley complained to supervisors about Bernstiel's alleged behavior and pursued an EEOC complaint against her, Bernstiel remained an owner of the dissolving firm and continued to seek profits from it through the Court of Common Pleas action against Rebar and the firm. *Id.* [17]–[18].

DiPrato and Bradley fail to plead an adequate claim of Title VII retaliation because any retaliation that took place after engagement in a protected activity was not at the hands of a current employer.

A plaintiff is said to have engaged in a "protected activity" if they "participate in certain Title VII proceedings [or otherwise] oppose discrimination made unlawful by Title VII." *Moore*, 461 F.3d at 341 (citing *Slagle v. Cty. Of Clarion*, 435 F.3d 262, 266 (3d Cir. 2006)). Participation in a heterosexual interoffice relationship is not a protected activity, nor is making a

general complaint to an employer about a co-worker's hostility. *See Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*, 450 F.3d 130, 135 (3d Cir. 2006) ("A general complaint of unfair treatment is insufficient to establish protected activity under Title VII."). However, DiPrato and Bradley's October 2020 EEOC complaint against Bernstiel does constitute engagement in a protected activity. *See Slagle*, 435 F.3d at 268 (finding that a facially valid EEOC complaint alleging Title VII discrimination constitutes a protected activity).

Although DiPrato and Bradley engaged in protected activity when they filed an EEOC complaint, their Title VII retaliation claim must fail because no amount of discovery will enable them to prove that their "employer" subsequently took a causally related adverse employment action against them. DiPrato and Bradley filed their EEOC complaint in October 2020. Compl. ¶ 89. But Bernstiel left Rebar Bernstiel in February 2020. ECF No. 1-3 ¶ 156. Notwithstanding the parties' dispute over whether Bernstiel was DiPrato and Bradley's "employer" prior to her departure from Rebar Bernstiel, she certainly was not their employer in October 2020. Any subsequent adverse actions by Bernstiel are therefore irrelevant to DiPrato and Bradley's Title VII retaliation claim. Because DiPrato and Bradley suffered no "employer" retaliation, their Title VII retaliation claim must fail.

--

DiPrato and Bradley have failed to state a Title VII claim upon which the Court may grant relief. All three pleaded theories of Title VII liability—sex discrimination, hostile work environment, and retaliation—fail. Because DiPrato and Bradley's Title VII claim fails to meet the pleading standard, I need not reach Bernstiel's argument as to whether Bernstiel is a proper defendant to DiPrato and Bradley's Title VII claim.

IV.     CONCLUSION

For the above reasons, I will dismiss DiPrato and Bradley's Title VII claim with prejudice. I decline to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3) over DiPrato and Bradley's remaining state law claims.

                                                                    ___s/ANITA B. BRODY, J.____
                                                                    ANITA B. BRODY, J.

Copies **VIA ECF**